Isabelle A. McDonnell, Genevieve A. Kinney, Ernest V. Amy v. Commissioner.
McDonnell v. Commissioner
Docket Nos. 110876, 110877, 112165.
United States Tax Court
1943 Tax Ct. Memo LEXIS 223; 2 T.C.M. (CCH) 352; T.C.M. (RIA) 43317; June 29, 1943
*223 George A. Donohue, Esq., 295 Madison Ave., New York City, for the petitioner. B. W. Berg, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax for the calendar year 1939, as follows: Isabelle A. McDonnell
Docket No. 110876
$2,365.74
Genevieve A. Kinney
Docket No. 110877
$ 793.90
Ernest V. Amy
Docket No. 112165
$1,064.74
The facts are stipulated in part. The only question is whether the stock of Cedarlawn Holding Corporation, owned by petitioners, became worthless in the year 1939. Findings of Fact The petitioner, Isabelle A. McDonnell, filed her return for the calendar year 1939 with the collector for the second district of New York. Petitioner, Genevieve A. Kinney, filed her return for the of New York. Petitioners kept their books and filed their returns on the cash receipts and disbursements basis. On or after January 1, 1939, each petitioner was the owner of 40 shares of the total 200 shares of capital stock of Cedarlawn Holding Corporation. Mrs. Isabelle O'D. Amy, mother of the petitioners owned an undivided one-half interest in a certain tract of land situated in Far *224 Rockaway, partly in Queens County, and partly in Nassau County, State of New York, known as Cedarlawn, and the other undivided one-half interest in said tract was owned by Louis V. O'Donohue, brother of Mrs. Amy. Mrs. O'D. Amy, died testate on July 21, 1924, and under the terms of her will, duly probated, devised a one-fifth portion of her interest in Cedarlawn to each petitioner, the remaining two-fifths of her interest being devised in equal shares to the others. The one-half interest in the property so devised by Mrs. Amy was duly returned in the Federal estate tax return filed by the representatives of her estate and the valuation of the one-half interest which was duly approved by the Treasury Department, for purposes of fixing the estate tax upon the estate of the decedent, was $197,730.50. This was the true market value of the one-half interest in the property so devised to the petitioners and to the others. Louis V. O'Donohue, uncle of the petitioners, being seized of the other one-half undivided interest in the property, died testate on February 19, 1926, and under the terms of his will, duly probated, devised a one-fifth portion of his interest in the property to each *225 of the petitioners, the remaining two-fifths of his interest being devised in equal shares to the others. The one-half interest in the property so devised by Mr. O'Donohue was duly returned in the Federal estate tax return filed by representatives of his estate and the valuation of this one-half interest, which was duly approved by the Treasury Department, for purposes of fixing the estate tax upon the estate of the decedent, was $260,904.50. This was the true market value of the one-half interest so devised to the petitioners and to the others. On and after February 19, 1926, the petitioners and the others owned property in fee simple as tenants in common, each owning an undivided one-fifth part of the Cedarlawn property. (Description stipulated but omitted here.) The property, being the property hereinabove referred to as the Cedarlawn property, consisting of unimproved real estate, was the property devised to the petitioners and to their other brothers and sisters by their mother and uncle as above described, and which had been duly valued for estate tax purposes in the estate of the two above described decedents at a total of $458,635. Subsequent to February 19, 1926, and prior *226 to July 1, 1936, various assessments were made upon the property and paid by petitioners and their other brothers and sisters, and various lots of the property had been sold so that on July 1, 1936, the remaining property had an adjusted cost basis of $445,307.21. Prior to July 1, 1936, and subsequent to June 30, 1927, various taxes and assessments upon the Cedarlawn property, aggregating $39,751.83, had been paid out of the rents and income of certain parcels of land situated in New York County, and owned in fee simple as tenants in common by petitioners and others. On July 1, 1936, it was agreed by the owners of the Cedarlawn property and the owners of the New York County property that the New York County property should be conveyed forthwith to a corporation to be organized under New York law and to be known as the Amy Holding Corporation which would issue its stock and securities pro rata to the grantors in exchange for the real estate; that the Cedarlawn property should be forthwith conveyed to a corporation to be organized under New York law and to be known as the Cedarlawn Holding Corporation which would issue 40 shares of its capital stock to each of the five grantors of *227 the Cedarlawn property in consideration for the property and $500 in cash; and that the Cedarlawn Holding Corporation would give a first mortgage upon its property in the amount of $39,751.83 to the Amy Holding Corporation to secure the advances for taxes and assessments paid upon the Cedarlawn property. Pursuant to this agreement, the Cedarlawn Holding Corporation was incorporated under New York law on July 1, 1936, and the Cedarlawn property was transferred to it as of that date, together with $500 in cash. The corporation then duly executed a first mortgage in the amount of $39,751.83 on its property in favor of the Amy Holding Corporation. It also issued to each of the five grantors of the property, including petitioners, 40 shares of its capital stock. On November 23, 1937, the five stockholders of the Cedarlawn Holding Corporation advanced a total sum of $1,021.66 to the corporation as an additional contribution of capital. The adjusted cost basis of each petitioners' 40 shares of stock in Cedarlawn Holding Corporation is stipulated to be as follows: Date of death values of land trans-
ferred adjusted for sales prior to
July 1, 1936 and for assessments
paid prior to said date by peti-
tioner and other tenants in com-
mon (brothers and sisters of
petitioners)
$445,307.21
Cash paid on incorporation (pro-
rata)
500.00
Contributions to capital (pro rata)
1,021.66
$446,828.87
Less mortgage given by Cedarlawn
Holding Corporation to Amy
Holding Corporation per agree-
ment of July 1, 1936
39,751.83
Total basis of 200 shares
$407,077.04
Basis of petitioners' 40 shares
$ 81,415.41
*228 The expenses paid and rental income received during the years 1936 to 1942 inclusive, were as follows: Year
Expenses
Rental Income
1936 $0
$ 318.75
1937
2,112.59
871.00
1938
2,132.18
825.75
1939
1,549.03
1,000.00
1940
1,186.13
1,000.00
1941
1,427.83
1,253.05
1942
329.67
851.15
The net amounts received from the sale of land, after deducting the expenses of sale, during the years 1936 to 1942, inclusive, were as follows: Com-
Applied
missions
Net
Selling
to Tax
and Legal
Cash
Year
Price
Arrears
Fees
Received
1938
$4,200.00
$2,460.00
$560.00
$1,180.00
1940
1,651.86
1,151.85
117.50
382.50
1941
2,234.88
1,934.88
25.00
375.00
As of December 31, 1939, the total of real estate taxes and assessments in arrears on the property of Cedarlawn Holding Corporation, including interest, amounted to $57,548.41. In addition, the corporation borrowed $2,753.41 from the Amy Holding Corporation on January 10, 1939, in order to pay off back taxes, and this sum was added to the mortgage, increasing it to $42,505.24. There was also an unsecured loan in the amount of $1,000, which was unpaid as of December 31, 1939. The assets *229 of the corporation on December 31, 1939 consisted of the unimproved real estate at Cedarlawn and cash in the sum of $438.01. The property transferred to the Cedarlawn Holding Corporation was undeveloped vacant land in the vicinity of the Long Island seashore. The property contained about 15 acres and had been subdivided on the municipal tax maps into 72 lots in Nassau County and 174 lots in Queens County, New York City. Each lot was 20 by 100 feet. Prior to 1939, the corporation had been able to make only one sale which comprised about an acre. From May until October of each year, the land was leased by the corporation to a golf club for use as part of a golf course. The property had depreciated in value since 1925; the corporation had made diligent efforts to sell the land, but purchasers could not be found. The revenue derived from leasing the property was small and the corporation had no assets to pay the taxes. The City of New York sold part of the lots in Queens County for tax liens in 1938. There being no independent purchases of the liens the City acquired them at the tax sale. Subsequent to May 1942, these liens were foreclosed by the City and title was taken to about 135 *230 lots in Queens County. This comprised about 8 acres. The corporation still owns 72 lots in Nassau County. The balance of the lots in Queens County, after the foreclosure sales in 1942 and a few sales by the corporation in 1940 and 1941, was about 22 lots. At a special meeting of the board of directors of the Cedarlawn Holding Corporation held on September 18, 1939, Ernest V. Amy, who was chairman, announced to the meeting that he had been unsuccessful in his efforts to sell the property; that tax sales on the property were being advertised; that on the basis of offers received for part of the property, and on the basis of appraisals of the property, the value of the property was less than the taxes and the principal of the mortgage; and that the Amy Holding Corporation had refused to advance any further monies to save any of the property from tax sales. The following resolution was thereupon adopted: Resolved, that the officers and directors of the Corporation forbear from making any further loan for the purpose of saving the property from tax sale, and that the said Board of Directors and the officers desist from making any further efforts to keep the property from tax sale. In *231 July 1940, the corporation sold 6.8 lots for $500 cash, subject to a tax lien of $1,764. The lien was then paid by the purchaser. From this sale, the corporation received net cash in the sum of $382.50 after the payment of commissions and legal fees. In March 1941, the corporation sold 9.9 lots for $400 over a tax lien of $1,934.88 and it received net cash of $375. In each of the years 1939 to 1942, inclusive, the corporation received some small income from renting part of the property for use as a golf course. The mortgage on the property of the corporation held by the Amy Holding Corporation in the sum is $42,505.24 is non-interest bearing and the principal payment is due in 1946. The fair market value of the real estate owned by the Cedarlawn Holding Corporation in 1939 was $86,000. The stock of the Cedarlawn Holding Corporation became worthless in 1939. Opinion The only question is whether the stock in Cedarlawn Holding Corporation became worthless in 1939. Each petitioner deducted a loss for worthless stock. Respondent disallowed the deductions. There is no dispute regarding the amount of the loss if it is held that the stock became worthless in the taxable year. The liens *232 for unpaid taxes and assessments amounted to $57,548.41 at the end of 1939; the fair market value of the property was $86,000; thus, the equity in the property over and above the first liens was about $28,452. The secondary liens represented by a first mortgage which was held by a creditor amounted to $42,505.24. Upon such facts it is evident that Cedarlawn Holding Corporation was insolvent, its equity in its sole asset was of no value and the stockholders could not reasonably expect to recover anything for their interests in the corporation. The question here turns upon the existence or non-existence in 1939 of special circumstances often called "unidentifiable events". Some event must have transpired in 1939 which determined the worthlessness of the stock of the corporation. Cedarlawn Holding Corporation was organized in July of 1936. After its organization, the corporation acquired real property subject to a mortgage of $39,751.83. During the two and a half years prior to January 1, 1939, taxes and assessments were unpaid and interest thereon was accumulating, so that at the end of 1938 the unpaid taxes amounted to approximately $53,500. Thus it appears that the total encumbrances *233 on the property at the end of 1938 amounted to about $93,251.83. Sales were made during 1938 aggregating $4,200, and net income from rents was $825.75. The property had been acquired and was being held for sale. The general condition of the real estate market in the vicinity was extremely bad during the period from 1936 to 1939. The entire tract of real estate comprised about 15 acres of land. Prior to 1939 only about one acre was sold. Taxes were delinquent on about 8 1/2 acres. The corporation had been able to pay taxes on about 4 1/2 acres. From all of these facts it is readily seen that during the entire period up to 1939, the corporation had been extremely unsuccessful in disposing of the property. Obviously it was only the hope that there would be a great improvement in the real estate market which provided any ground for expecting to salvage anything from the property over and above the tax liens. The corporation's only source of credit was another family owned corporation, the Amy Holding Corporation. It loaned the Cedarlawn Holding Corporation $2,753.41 in 1939, but it decided in 1939 not to advance any further money to the corporation, at all. Thus, in 1939, the corporation's *234 chief source of credit came to an end. Also, in 1938, the City of New York sold approximately 135 lots in Queens County for unpaid taxes and assessments for the years 1934, 1935, 1936, and 1937. At the hearing, a New York attorney testified as to the procedure of the City in these cases. If taxes or assessments on real property are delinquent, the City advertises them for sale. If there is no purchaser for these liens at the sale the City takes title to them for the amount of unpaid taxes and assessments, plus interest. After the sale there is a three year period of redemption in which the owner may redeem the property upon payment of the tax liens and the interest thereon. Upon the expiration of three years from the tax sale, the City may commence proceedings to foreclose the tax liens. In this case, these proceedings were commenced in May 1942, and the right of the corporation to redeem the property was foreclosed in that year. It has been held in numerous cases that if property or an equity therein has become worthless, the mere fact that a bare legal title is held by the taxpayer is not enough to prevent him from taking a loss. ; *235 affd., ; ; ; ; ; . The facts in this case show that during 1939 and prior years, the property was a "white elephant" to the corporation. Its value was steadily depreciating and the unpaid taxes and assessments were increasing and devouring the equity in the property. The corporation had made diligent efforts to sell its land but purchasers could not be found. Prior to September 1939, the corporation had been able to borrow money from the Amy Holding Corporation to pay some of the taxes and assessments. In 1939, the corporation had borrowed an additional $2,753.41 from the Amy Holding Corporation to apply against the unpaid taxes and assessments. As long as the corporation was able to borrow money to pay on account of taxes and assessments, there was still a reasonable hope and expectation that *236 the property could be held in anticipation of finding purchasers. However, in 1939, that hope was foreclosed when the Amy Holding Corporation refused to make any further loans. The corporation had no assets of its own to apply toward the taxes. The rent received from the property was inconsequential. A purchaser could not be found. The market value of the property was less than the aggregate amount of the liens upon it. These facts constitute proof that the value of the corporation's property and of its right of redemption was completely extinguished during the taxable year. The action of the Amy Holding Corporation in 1939 in refusing to make any further loans to the corporation at a time when the corporation had no assets, and the action of the corporation's board of directors that no further efforts should be made to save the property, are the "identifiable events" which fix 1939 as the year in which the value of the corporation's property was completely extinguished. . For the above reasons it is held that the stock of the Cedarlawn Holding Corporation became worthless in 1939, and the petitioners sustained *237 losses in 1939. Decisions will be entered for petitioners.